IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD S. BAIM, et al., *Plaintiffs,* v. JOEL DUKART, et al., *Defendants.* | CIVIL ACTION NO. 21-1696 |

**PAPPERT, J.**  August 8, 2022

**MEMORANDUM**

Joel and Michael Dukart offered to purchase four Philadelphia-area McDonald's restaurants for roughly $19 million from companies controlled by Edward Baim, and the parties eventually came to terms on a sale. Pursuant to a prior agreement with Baim, however, GNS Enterprises 6, LP, whose parent company is GNS Inc., held a right of first refusal to purchase the restaurants. The sale to the Dukarts was contingent, among other things, on GNS 6 not exercising that right and there being no pending or threatened litigation challenging the sale.

GNS 6 assigned the right to GNS Inc., which exercised it. Baim subsequently sold the restaurants to GNS Inc., which he claims he was contractually obligated to do. The Dukarts contend Baim was obligated to sell them the restaurants under their purchase and sale agreement. Baim and the companies through which he owned the restaurants sued the Dukarts seeking a declaration from the Court blessing the sale to GNS Inc. Plaintiffs then moved for summary judgment. After thoroughly reviewing the record and the parties' submissions, the Court denies the Motion.

1

The competing and overlapping negotiations between Baim and the Dukarts and Baim and GNS Inc. and the inconsistent language in the dueling purchase agreements make for a somewhat confusing, counterintuitive and inherently contradictory record. In sum, while GNS Inc. exercised its right of first refusal, a reasonable jury could find the Dukarts waived that contingency in their agreement with Baim.  Moreover, there are material factual disputes concerning possible pending or threatened litigation surrounding the sale.

I

A

On October 31, 2019, Baim[1] entered into a purchase and sale agreement to sell three McDonald's restaurants in New Jersey to GNS 6, which Grant Skylass owns along with GNS Inc.  (Defs' Ex. 12, ECF 23-2; Pls' Ex. M ¶¶ 1–2, ECF 22-4.)  The sale was finalized in February of 2020.  (Defs' Ex. 12 § 1.1; Defs' Answer to Pls' Statement of Undisputed Material Facts ¶ 4, ECF 23-4.)

The Skylass Purchase and Sale Agreement granted GNS 6 a right of first refusal to purchase four additional McDonald's in Pennsylvania, three in Philadelphia and the fourth in a county adjacent to the city, also owned by Baim:

> If . . . any BAIM ENTITY receives [an offer] for any one or more
> PHILADELPHIA RESTAURANT from anyone other than PURCHASER
> and desires to accept such offer, it must first give notice to PURCHASER
> of the proposed terms and conditions of the offer, including without
> limitation the purchase price, the proposed closing date and the conditions
> of closing (the "AGREEMENT TERMS").  Within 14 days of the date of
> the notice, . . . PURCHASER must notify Edward Baim of its agreement
> to purchase the restaurant on the AGREEMENT TERMS.  Otherwise, the
> BAIM ENTITY may sell the restaurant pursuant to [the offer].

---

[1]   For readability, the Court refers to Baim rather than Baim and the business entities he controlled.

(Pls' Ex. A § 10.11(b), ECF 22-4.)  The parties, with one irrelevant exception, were not allowed to assign their rights under the Agreement.  (Defs' Ex. 12 § 10.2, ECF 23-2.)  Notwithstanding this provision, GNS 6 subsequently assigned its right of first refusal to GNS Inc.  (Skylass Aff. ¶ 6.)

Joel Dukart told Baim he and his brother wanted to buy the four Pennsylvania restaurants for approximately $19 million.  (J. Dukart Dep. 5:16–10:16, Pls' Ex. B, ECF 22-4, Defs' Ex. 3, ECF 23-2.)  Baim told them about the right of first refusal in the Skylass Purchase and Sale Agreement.  (*Id.* at 10:24–11:8; M. Dukart Dep. 17:4–24, Pls' Ex. C, ECF 22-4, Defs' Ex. 10, ECF 23-2.)

On October 5, 2020, the Dukarts sent Baim a draft letter of intent setting forth their proposed terms for purchasing the four McDonald's.  (Defs' Ex. 2, ECF 23-2.)  Baim's counsel then gave the Dukarts' lawyer the specific provision in the Skylass Agreement granting the right of first refusal.  (Defs' Ex. 13, ECF 23-2.)

On October 9, 2020, Baim and the Dukarts signed their letter of intent, which included a provision recognizing that GNS Inc. had the right of first refusal to any sale.  (J. Dukart Dep. 14:5–8, 34:2–6.)  Baim's counsel subsequently mailed the Dukarts' offer to GNS, Inc., providing the notice required under the Skylass Agreement and giving GNS Inc. two weeks to exercise its right.  (Pls' Ex. D, ECF 22-4.)  A week later, Skylass's counsel told Baim that GNS Inc. was exercising its right to purchase the restaurants on the terms proposed by the Dukarts.  (Pls' Ex. E, ECF 22-4.)  Importantly, Baim never objected to the substitution of GNS Inc. for GNS 6 and negotiated the sale

to GNS Inc. *See* (Baim Dep. 84:22–86:15, Pls' Ex. F, ECF 22-4, Defs' Ex. 1, ECF 23-2; Defs' Ex. 8, ECF 23-2).

B

On October 22, 2020, Skylass's lawyer sent Baim's counsel a draft purchase and sale agreement for the four Pennsylvania McDonald's. (Defs' Ex. 14, ECF 23-2.) But the parties disputed the terms of the proposed transaction. *See, e.g.*, (Baim Dep. 70:7–71:16, 74:4–75:1, 78:21–79:5; Defs' Ex. 6, ECF 23-2). Specifically, Skylass felt Baim was trying to add terms to those proposed by the Dukarts. (Defs' Exs. 5, 7–8, ECF 23-2); *see also* (Glaser Dep. 18:11–24, Pls' Ex. G, ECF 22-4, Defs' Ex. 4, ECF 23-2). For example, Baim wanted Skylass to make a larger, nonrefundable deposit. (Baim Dep. 48:22–49:4); *see also* (Glaser Dep. 18:2–16).

In late October, Skylass retained litigation counsel to enforce GNS Inc.'s right of first refusal and complete the purchase of the four restaurants. (Defs' Ex. 5, ECF 23-2; Glaser Dep. 14:3–19, 19:21–23.) Counsel then told Baim's attorney that his client was ready to complete the proposed transaction on the Dukarts' terms, pursuant to its enforceable right to match their offer. (Defs' Exs. 5, 7.) Moreover, Skylass's lawyer said his client was "fully prepared to seek specific performance in Court if necessary" but was willing to consider modifications "if that will avoid the need for litigation." (Defs' Ex. 7); *see also* (Defs' Ex. 5 (Skylass's counsel stating intention to "seek redress in court" if "dispute" is not resolved); Baim Dep. 58:13–21).

4

C

On October 26, 2020, as Baim negotiated with both Skylass and the Dukarts, the latter sent Baim a draft purchase and sale agreement, which again included a provision addressing GNS Inc.'s right of first refusal on any transaction involving the Pennsylvania restaurants. (Pls' Exs. I–J, ECF 22-4.) Four days later, Baim and the Dukarts signed the Dukart Purchase and Sale Agreement. (Pls' Exs. J–K, ECF 22-4.) It provided, *inter alia*, that the Dukarts' obligation to purchase the restaurants was subject to the following condition, which the Dukarts had, in their sole discretion, the right to waive:

> Right of First Refusal. GNS Enterprises [6], LP shall not have exercised its rights pursuant to and in accordance with the terms of the Right of First Refusal contained in [the Skylass Purchase and Sale Agreement].

(Pls' Ex. J § 7.10.) In turn, Baim's obligation to sell the restaurants was subject to the following condition:

> Challenge to This Agreement. There shall be no pending or threatened claim and/or suit by any party challenging this AGREEMENT or the consummation of the transactions contemplated herein.

(*Id.* at § 5.2.)[2] Additionally, Baim represented the following:

> Litigation. Except as listed on Exhibit F attached hereto: . . . There is no investigative action, inquiry, proceeding or litigation pending, or to the best knowledge of SELLER . . . threatened, against SELLER . . . or the RESTAURANTS before any court. . . . [SELLER does not know] of the occurrence of any events which are likely to give rise to any such action, proceeding or investigation.

(*Id.* at § 4.1.) Exhibit F is blank and was never amended. (*Id.* at Ex. F.)

---

[2] The Dukarts' purchase obligation was also subject to this condition. (Pls' Ex. J § 7.2, ECF 22-4.)

On November 3, 2020, Skylass's counsel told Baim's lawyer that his client "has exercised its Right of First Refusal" and intended to consummate its purchase of the four restaurants. (Defs' Ex. 9, ECF 23-2.) Baim thereafter entered into a purchase and sale agreement with GNS Inc. and sent a copy to the Dukarts' attorney. (Pls' Ex. L, ECF 22-4; Defs' Answer to Pls' Statement of Undisputed Material Facts ¶¶ 26–27, ECF 23-4.) Baim sold the restaurants to GNS Inc. on December 21, 2020. (Pls' Ex. L § 1.1.)

On May 24, 2021, Baim and the entities through which he had owned the Pennsylvania McDonald's sued the Dukarts seeking a declaratory judgment that he lawfully sold the restaurants to GNS Inc.. (ECF 5.) The Dukarts asserted four counterclaims related to their transaction with Baim, including for breach of the Dukart Purchase and Sale Agreement. (ECF 7 at 8–16.)[3]

## II

Summary judgment is proper if the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A fact is material if it might affect the case's outcome under the governing law, and a genuine dispute exists if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence supporting the nonmovant will not suffice; rather, to avoid

---

[3] Defendants voluntarily withdrew two (claims three and four) of their counterclaims. (Defs' Brief in Resp. to Pls' Summ. J. Mot. 15–16, ECF 23-1; Defs' Answer & Counterclaims 13–16, ECF 7.) One of the Defendants' remaining claims is for breach of the Dukart Purchase and Sale Agreement (claim one). (Defs' Answer & Counterclaims 13–15.) The other is for breach of a related agreement under which Defendants contend Plaintiffs owed them $100,000 for increased rent at one of the four McDonald's restaurants (claim two). (*Id.* at 15; Defs' Ex. 11 B.) Claim one can proceed, as the Court explains below, and so can claim two because it is tied to claim one.

summary judgment, he must set forth specific facts showing there is a genuine trial issue and cannot rest on pleadings. *Id.* at 252, 256.

A court can consider any material in the record that may be admissible at trial, and must view facts in the light most favorable to the nonmovant and draw all inferences in its favor. *See* Fed. R. Civ. P. 56(c)(2); *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). But it need not credit mere suspicions, conclusory allegations or unsupported assertions. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). Additionally, the court cannot make credibility determinations or weigh the evidence. *See Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016).

### III

#### A

##### 1

The goal of contract interpretation is to determine the parties' intent as expressed in the contract's language. *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). If that language is clear and unambiguous, courts must give effect to its plain meaning. *Prudential Prop. & Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1174 (Pa. 2006); *Murphy v. Duquesne Univ. of The Holy Ghost*, 777 A.2d 418, 430 (Pa. 2001). Extrinsic evidence of a contract's meaning can be considered only when its terms are ambiguous—that is, reasonably susceptible of different interpretations. *Murphy*, 777 A.2d at 429; *Trombetta v. Raymond James Fin. Servs., Inc.*, 907 A.2d 550, 562 (Pa. Sup. Ct. 2006).

Courts cannot assume contractual language was chosen carelessly or the parties ignored its meaning. *Kmart of Pennsylvania, LP v. MD Mall Assocs., LLC*, 959 A.2d

939, 944 (Pa. Sup. Ct. 2008). Nor can courts imply contracts at odds with their language. *See Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 388 (Pa. 1986). Rather, they must interpret contracts to give effect to all their provisions. *Commonwealth ex rel. Kane v. UPMC*, 129 A.3d 441, 464 (Pa. 2015).

Parties to a contract can waive its provisions. *Black Top Paving Co., Inc. v. Commonwealth, Dept' of Transp.*, 466 A.2d 774, 776 (Pa. Commw. Ct. 1983). A contractual waiver, which can be express or implied, is the intentional and voluntary relinquishment or abandonment of a known contractual right. *Moscatiello Const. Co. v. Pittsburgh Water & Sewer Auth.*, 648 A.2d 1249, 1251 (Pa. Commw. Ct. 1994). An implied waiver occurs when there is an unexpressed intention to waive clearly inferable from the circumstances. *Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 566 A.2d 1214, 1223 (Pa. Sup. Ct. 1989). Put another way, the waiving party's conduct must be inconsistent with a desire to rely on the provision at issue. *Samuel J. Marranca Gen. Cont. Co. v. Amerimar Cherry Hill Assocs. LP*, 610 A.2d 499, 501 (Pa. Sup. Ct. 1992).

2

Plaintiffs ask the Court to (1) declare they "acted properly" when they sold the four Pennsylvania McDonald's to GNS Inc. and had no obligation to sell these restaurants to Defendants; and (2) "dismiss" Defendants' counterclaims. (Pls' Brief in Supp. of Summ. J 13, ECF 22-1.)

Under the Dukart Purchase and Sale Agreement, Plaintiffs were required to sell the Pennsylvania restaurants to the Dukarts if two conditions precedent were satisfied. *See Acme Markets, Inc. v. Fed. Armored Exp., Inc.*, 648 A.2d 1218, 1220 (Pa. Sup. Ct. 1994). First, GNS 6 did not exercise its right of first refusal and, second, there was no

pending or threatened litigation "challenging" the Agreement. (Pls' Ex. J §§ 5.2, 7.10.) Plaintiffs contend neither condition was satisfied, but a reasonable jury could find otherwise.

B

1

The record shows GNS Inc. properly exercised the right of first refusal in the Skylass Purchase and Sale Agreement. The Agreement gave GNS 6, not GNS Inc., the right of first refusal. (Pls' Ex. A § 10.11(b), ECF 22-4.) GNS Inc., however, could exercise that right because GNS 6, its subsidiary, assigned it to GNS Inc. (Pls' Ex. E, ECF 22-4; Ex. M ¶¶ 2, 6, ECF 22-4.) Although the Skylass Agreement bars assignments, Baim implicitly waived this provision. *See Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 566 A.2d 1214, 1223 (Pa. Sup. Ct. 1989). He did not object to GNS Inc.'s exercise of the right of first refusal, continued negotiating the transaction for the four restaurants with Skylass's counsel and ultimately sold them to GNS Inc. *See* (Defs' Ex. 8; Baim Dep. 84:22–86:15, Pls' Ex. F, ECF 22-4, Defs' Ex. 1, ECF 23-3; Pls' Ex. L § 1.1, ECF 22-4). Moreover, Defendants have no basis to enforce an anti-assignment provision in a contract to which they aren't a party. *See Konyk v. Pennsylvania State Police of Commonwealth*, 183 A.3d 981, 987–88 (Pa. 2018); *Delor v. ATX Telecomms. Servs., Ltd.*, No. 96-2462, 1996 WL 355334, at *2 (E.D. Pa. June 25, 1996).

Again, while GNS Inc. had (and exercised) the right of first refusal to purchase the restaurants pursuant to the Skylass Purchase Agreement, the agreement between Baim and the Dukarts allowed the Dukarts to waive the condition precedent that GNS did not exercise that right. These provisions in the separate purchase and sale

agreements are contradictory, making the parties' intent difficult, if not impossible, to determine. *See Standard Venetian Blind*, 469 A.2d at 566. In any event, reasonable jurors could find the Dukarts waived the condition precedent. (Pls' Ex. J § 7.10.)

Specifically, the Dukarts initially sought to negotiate a reasonable breakup fee with Baim based on the time and resources the Dukarts spent negotiating the proposed transaction. (Defs' SUMF ¶ 28, ECF 23-4.) The parties agreed that if Baim sold the restaurants to Skylass rather than the Dukarts, Baim would pay the Dukarts a mutually agreed upon fee. (Pls. Ex. K, ECF 22-4.) The parties, however, failed to reach agreement on the fee. The Dukarts then waived the condition precedent by remaining committed to purchasing the four restaurants from Baim even after GNS Inc. exercised its right of first refusal. *See* (Defs' SUMF ¶¶ 28–31); *See Den-Tal-Ez*, 566 A.2d at 1223.[4]

2

Second, it is unclear whether there was "pending or threatened" litigation as defined in the Dukart Purchase and Sale Agreement. Indeed, the Agreement's terms indicate otherwise. *See E.R. Linde Constr. Corp. v. Goodwin*, 68 A.3d 346, 349 (Pa. Sup. Ct. 2013). Under Section 4.1, Baim asserted that with the exception of matters listed in Exhibit F, there was no litigation pending or threatened against him or the

---

[4] Plaintiffs argue the Dukarts' waiver is a red herring. (Pls' Reply in Supp. of Summ. J. Mot. 7–8, ECF 24.) To the contrary, the waiver was fully consistent with the Dukart Purchase and Sale Agreement's plain terms. And the Court must interpret the Agreement to give effect to all those terms, including the provision clearly and unambiguously granting the Dukarts the option to waive this condition precedent. *See* (Pls. Ex. J § 7.10); *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009); *Grant v. Sw. Pennsylvania Water Auth.*, 601 A.2d 1359, 1361 (Pa. Commw. Ct. 1992).

Pennsylvania McDonald's and no events likely to give rise to such litigation. (Pls. Ex. J § 4.1.) Again, Exhibit F is blank.[5]

Plaintiffs argue that, notwithstanding these provisions, Skylass threatened litigation in connection with GNS Inc.'s purchase of the four restaurants. Specifically, after Baim allegedly attempted to add terms to the Dukarts' offer, Skylass's litigation counsel said his client was prepared to seek specific performance pursuant to its right of first refusal. (Defs' Ex. 7.) Moreover, Skylass's other lawyer said his client intended to seek redress in court if the parties' dispute could not be resolved. (Defs' Ex. 5); *see also* (Pls' Reply in Supp. of Summ. J. Mot. 5–6, ECF 24).

These communications do not, however, constitute threats of litigation under the Dukart Agreement. The threatened suit must have challenged the "AGREEMENT or the consummation of the transactions contemplated herein." (Pls' Ex. J § 4.1.) The litigation Skylass threatened was aimed at enforcing GNS Inc.'s right of first refusal— not contesting the Dukart Agreement, which did not exist when Skylass's lawyers threatened to take Baim to court. *See* (Defs' Exs. 5, 7; Pls' Ex. K; Baim Dep. 104:6–17; M. Dukart Dep. 47:4–48:17). Nor were any such threats made after the Agreement was signed. (Baim Dep. 89:21–24.)[6]

---

[5] Plaintiffs ask the Court to disregard section 4.1 and Exhibit F, claiming the fact that Exhibit F lists nothing "does not alter the reality of the threatened litigation." (Pls' Reply in Supp. of Summ. J. Mot. 6.) But the relevant reality when interpreting a contract is its language. *See TIG Specialty Ins. Co. v. Koken*, 855 A.2d 900, 908 (Pa. Commw. Ct. 2004). The Court must focus on what a contract says, not guess what the parties may have intended. *See Empire Sanitary Landfill, Inc. v. Riverside Sch. Dist.*, 739 A.2d 651, 654 (Pa. Commw. Ct. 1999); *Grant v. Sw. Pennsylvania Water Auth.*, 601 A.2d 1359, 1361 (Pa. Commw. Ct. 1992).

[6] Plaintiffs seize on Baim's following description of Skylass's counsel's threat: "if [Baim] went ahead with the Dukarts . . . [Skylass's counsel] would sue to enforce specific performance for the right of first refusal." (Baim Dep. 87:7–11, Pls. Ex. F, ECF 22-4, Defs' Ex. 1, ECF 23-2.) This characterization only confirms Skylass's counsel threatened to vindicate the right of first refusal in court—not challenge the Dukart Agreement.

12

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.